# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | **Bankruptcy Case** 09-10864 (BKT) |
| **Vicky Rodríguez Torres**  Debtor | CHAPTER 7 |
| **Government Development Bank of Puerto Rico**  Plaintiff | **Adversary Proc.** 10-00139 (BKT-7) |
| v. | **Nondischargeability under 11 U.S.C. §523(a)(6) for willful and malicious injury** |
| **Vicky Rodríguez Torres**  Defendants | |

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, the Governmental Development Bank of Puerto Rico (hereinafter referred to as "GDB"), through the undersigned counsels, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7 of the Local Civil Rules, hereby submits its Memorandum of Law in support of its Motion for Summary Judgment filed on this same date:

**I.     Introduction**

On August 11, 2010, GDB filed the instant adversary complaint seeking nondischargeability of the attorneys' fees award of $41,416.25 granted in its favor by the U.S. District Court in Civil Case No. 09-1151 (JP) Vicky Rodríguez Torres, et al. v. Government Development Bank of Puerto Rico, et al. (hereinafter referred to as "Rodríguez I"). As explained by the District Court itself, the award of attorneys' fees came as the consequence of Plaintiff's unreasonable, vexatious, bad faith, frivolous and unnecessary behavior during the litigation of Rodríguez I, which resulted in injury to

the GDB by considerably increasing the cost of the litigation. In awarding the attorneys' fees, the District Court issued specific factual findings regarding Debtor's unwarranted conduct during the litigation of Rodríguez I. Premised on such factual findings, the GDB respectfully submits that the attorneys' fees award granted by the District Court in Rodríguez I is nondischargeable under section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. §523(a)(6). In addition, the GDB contends that the doctrine of collateral estoppel bars the parties from re-litigating factual matters regarding Debtor's conduct during the litigation of Rodríguez I. The GDB further contends that such already decided factual matters establish the elements of a "willful and malicious injury" under the standard set forth by section 523(a)(6) of the Bankruptcy Code and its interpretative case-law.

**II.     Section 523(a)(6) of the Bankruptcy Code**

Claims for willful and malicious injury by the debtor to an entity or property of another entity are nondischargeable in bankruptcy proceedings. To such effects, section 523(a)(6) of the Bankruptcy Code provides as follows:

> A discharge under section 727 of this title does not discharge an individual debtor from any debt-
> ...
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §523(a)(6).

The question in this case is whether the attorneys' fees awarded to the GDB by the District Court constitute a nondischargeable debt under section 523(a)(6). As will be shown below, this issue of law has already been decided by several bankruptcy courts from other circuits.

The Bankruptcy Code does not define "willful" and/or "malicious". See In re Sullivan, 198 B.R. 417, 419 (Bankr.D.Mass.1996). In Tinker v. Colwell, the United States Supreme Court,

interpreting § 17 of the Bankruptcy Act, the predecessor to § 523(a)(6), held that willful and malicious injuries connoted acts done intentionally and without justification or excuse. See Tinker v. Colwell, 193 U.S. 473 (1904). However, when Congress enacted the Bankruptcy Code in 1978, it partly overruled Tinker stating in legislative history that: " 'willful' means deliberate or intentional. To the extent that Tinker held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled." S.Rep. No. 95-989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 365 (1977), reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6320. Thus, in Kawaauhau v. Geiger, the Supreme Court subsequently refined the definition of the term "willful" in § 523(a)(6) when it held that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61 (1998). In other words, an act falls under § 523(a)(6) if it was committed with "the actual intent to cause injury." Id.

On the other hand, " 'malice' under 523(a)(6) requires 'a showing that the debtor's willful, injurious conduct was undertaken without just cause or excuse.'" Gomes v. Limieux (In re Limieux), 306 B.R. 433, 440 (Bankr.D.Mass.2004) (quoting McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 21 (Bankr.D.Me.1998)). Thus, to show a willful and malicious injury under 523(a)(6), the creditor must show that "(1) the injuries complained of were the result of an act of the debtor done without justification or excuse; and (2) the debtor acted either intending to cause an injury or with substantial certainty that the injury would occur." In re Limieux, 306 B.R. at 440; See also In re Ortiz, 2009 WL 2912497 (Bankr. D.P.R. 2009).

In Hughes v. Arnold (In re Hughes), 393 B.R. 712 (E.D. Cal. 2008), aff'd 347 Fed. Appx. 359 (9th Cir. 2009), cert. denied, __ U.S. __ (2010) (May 10, 2010), the district court was faced with

a controversy similar to the one at hand. In Hughes, the bankruptcy court held that the attorneys' fees award granted by the state court in favor of Appellees, following a verdict in their favor in a sexual harassment action brought by Appellant, was nondischargeable under 11 U.S.C. §523(a)(6). The district court affirmed the decision of the bankruptcy court. More specifically, the district court sustained the decision of the bankruptcy court to the effects that Appellant's conduct in initiating and prosecuting her sexual harassment claim against Appellees was willful and malicious insofar as her conduct was unreasonable, frivolous, vexatious and in bad faith. The district court further acknowledged that the bankruptcy court had properly relied upon the state court's findings, specifically, that Appellant' sexual harassment claim was brought "in bad faith and with the [Debtor's] declared objective 'to bring Clay [Arnold] down,' and that she knew from the outset that "there was no reasonable basis" for the claim. In so holding, the district court rejected Debtor-Appellant's argument that nondischargeable debts under §523(a)(6) were confined to debts arising out of intentional torts. On the contrary, the district court in Hughes held that nondischargeable debts under §523(a)(6) were not limited to debts arising out of an intentional tort, but rather, that §523(a)(6) excepted from discharge any debt for "willful and malicious injury by the debtor." In the district court's opinion, the state court's factual findings were sufficient to show that Appellant's conduct in initiating and prosecuting her sexual harassment claim constituted tortious conduct, resulting in willful and malicious injury. Consequently, the district court concluded that because the conduct giving rise to the attorneys' fees award against Appellant was willful and malicious, the attorneys' fees award was excepted from discharge under §523(a)(6). Finally, the district court concluded that said determination was consistent with the fundamental policy of bankruptcy law to only grant discharges to the honest but unfortunate debtor. See In re Hughes, 393 B.R. at 718-719.

Like in Hughes, several other bankruptcy courts have upheld the nondischargeability of an award of attorney's fees pursuant to §523(a)(6). For example, in In re Carlson, 224 B.R. 659 (Bankr. N.D. Ill., 1998), Debtor, an attorney, was sued by law firm French Kezelis & Kominiarek, P.C. ("French") to determine the dischargeability of a debt pursuant to 11 U.S.C. §523(a)(6). The underlying facts were that French had defeated Debtor in a previous case before the District Court. Subsequently, Debtor filed another complaint before the state court, in which he named French as defendant. However, the state court litigation was dismissed pursuant to a motion of defendants for plaintiff's failure to state a cause of action. Further, Plaintiff was sanctioned for having filed an unwarranted lawsuit, not supported by fact or existing law. After Debtor filed his petition for bankruptcy, French filed the nondischargeability complaint under 11 U.S.C. §523(a)(6). The Bankruptcy Court found that the purpose of the state court lawsuit was to harass or get even with French for having defeated Debtor in the previous federal litigation, thus causing French to incur expenses exceeding $20,000.00 in defending itself. The Bankruptcy Court held that in filing a lawsuit to harass or get even with the law firm, the Debtor necessarily knew and intended the law firm to incur in expenses defending itself. In addition, the Bankruptcy Court found the findings of the state court to fit the definition of malice as an act that was wrongful and without just cause or excuse. Finally the court held that Debtor was collaterally estopped from contesting the state court's findings and found them sufficient to establish the elements for a judgment of nondischargeability under §523(a)(6).

In In re Chaires, 249 B.R. 101 (Bankr. D.Md., 2000), Plaintiff, Erie Insurance Group ("Erie"), filed a motion for summary judgment requesting that a monetary sanction imposed by the state court on the Debtor, an attorney, for pursuing a meritless litigation, be deemed as a nondischargeable debt

under 11 U.S.C. §523(a)(6). The pertinent facts underlying the dischargeability action reveal that, after the state court proceeding was dismissed with prejudice, Erie's motion for costs and attorneys' fees was granted and judgment was entered against the Debtor for $74,435.06. The state court found that the litigation was maintained with a lack of substantial justification and with bad faith. The bankruptcy court, thus, concluded that Debtor intended to harm Erie and that the harm was the need of Erie to incur the costs of defending itself from the unjustified civil action. In addition, the bankruptcy court applied the doctrine of collateral estoppel by holding that the state court' specific findings of bad faith and lack of substantial justification in the institution or maintenance of the state litigation, were the same issues sought to be precluded in considering the willful and malicious nature of Debtor's actions under 11 U.S.C. §523(a)(6). Finally, the bankruptcy court held that its conclusion was consistent with the holding of courts of other jurisdictions examining the issue post Kawaauhau v. Geiger.

In Ball v. A.O. Smith Corp., 451 F.3d 66 (2nd Cir. 2006) the Court of Appeals for the Second Circuit was faced with a similar situation. In 1998, James Ball ("Ball"), an attorney, filed a lawsuit on behalf of two Louisiana farmers, Timothy and Steven Gautreau, against A.O. Smith Corporation ("A.O. Smith"). The lawsuit arose from the purchase by the Gautreaus, in 1977, of an used Harvestore silo manufactured by A.O. Smith. The complaint alleged RICO and state law fraud claims against A.O. Smith. In August 2000, the district court granted summary judgment for A.O. Smith and dismissed the action with prejudice. The court held that plaintiffs' claims were clearly time-barred under the one-year period prescribed for the state-law claims and the four-year statute of limitations for the RICO claims. Subsequently, A.O. Smith sought sanctions against Ball for his role bringing the suit. After a two-day evidentiary hearing, the district court concluded that "[t]here

was not a colorable claim when the lawsuit was filed" and that the plaintiffs' claims "were so obviously [barred] that under the circumstances it was unreasonable to bring the suit in the first place." Accordingly, the district court ordered Ball to pay the entire cost of A.O. Smith's defense, which came to $168,397.21. The Fifth Circuit affirmed this sanction. Gautreau v. A.O. Smith Corp., 34 Fed. Appx. 962 (5th Cir., 2002). Subsequently, on February 2002, Ball filed a petition for relief under Chapter 7 of the Bankruptcy Code before the Bankruptcy Court for the Northern District of New York. A.O. Smith filed an adversary proceeding requesting that the sanctions imposed against Ball in the Gautreau proceeding be declared nondischargeable under 11 U.S.C. §523(a)(6). The bankruptcy court agreed with A.O. Smith that the debt was for Ball's willful and malicious actions and therefore exempt from discharge. On Ball's appeal, the District Court determined that his "conduct is properly characterized as 'willful and malicious'" and affirmed the bankruptcy court's holding. Ball then appealed to the Court of Appeals for the Second Circuit, which affirmed, by holding that the district court's factual findings and its decision to impose sanctions against Ball for filing the Gautreau's lawsuit precluded him from re-litigating the issue of willfulness and malice.

In the case at hand, when the District Court granted the award of attorneys' fees in favor of the GDB in Rodríguez I, it specifically made factual findings about Debtor's behavior as being frivolous, devoid of foundation, inexcusable, contrary to the goals of the Rules of Civil Procedure, unnecessary, unreasonable and completely baseless. More specifically, in Rodríguez I the factual findings of the District Court were as follows:

> 1.    Electronic Discovery
> ...
> After considering the arguments, the Court determines that Defendants are entitled to recover attorneys' fees incurred in dealing with electronic discovery issues. Plaintiffs had the opportunity to request electronic discovery at the Federal Rule of Civil Procedure 26(f) Conference and at the Initial Scheduling Conference ("ISC"),

but failed to do so. (No. 169). Instead, Plaintiffs, as discussed above, later brought various motions that the Court found **lacked foundation**. As a result of said motions, Defendants had to waste time and effort to oppose the motions, and Plaintiffs **unnecessarily and unreasonably** multiplied the proceedings. Accordingly, the Court finds that Defendants are entitled to attorneys' fees for the motions related to electronic discovery.

2.      Written Discovery

...

Based on these separate incidents, Defendants move for the Court to order Plaintiffs to pay Defendants' attorneys' fees. After considering the arguments, the Court finds that Defendants are entitled to attorneys' fees. **Plaintiffs' behavior** during the aforementioned instances was **at the very least unreasonable**. In every one of said instances, Plaintiffs had a clear duty to provide Defendants with the information requested. Plaintiffs had a clear duty to provide Defendants with the information requested. Plaintiffs ignored that duty and, as a result, delayed the proceedings and increased the costs of litigation by forcing Defendants to file several motions. Furthermore, **Plaintiffs behavior of hiding information, such as her previous lawsuits and the doctors who had previously treated her, is inexcusable and directly contradicts the goals of the Federal Rule of Civil Procedure**. Accordingly, the Court finds that Defendants are entitled to atttorneys' fees for the written discovery discussed in this section.

3.      Third-Party Subpoenas

...

The Court agrees with Defendants. The ISC Order was clear that no further discovery could be conducted without leave of the Court. Plaintiffs **unreasonably disregarded** the Court's Order and issued the unauthorized subpoenas. As such, Defendants are entitled to receive attorneys' fees from Plaintiffs for the work done related to the unauthorized subpoenas.

4.      Motion in limine

...

After considering the argument, the Court finds that Plaintiffs should pay for the attorneys' fees incurred by Defendants in relation to said motion. In the Order resolving the motion, the Court found that **Plaintiffs' motion was without foundation** and, as such, an award of attorneys' fees is warranted.

B.      Wage Discrimination Claims

The Court agrees. Plaintiffs' failure to even attempt to present evidence of their wage discrimination claims shows that the **claim was completely baseless**. Accordingly, the Court finds that Defendants are entitled to attorneys' fees for the wage discrimination claims.

C.  Section 1983

After considering the arguments raised by Defendants, the Court finds that Defendants are entitled to attorneys' fees for the Section 1983 claims. Plaintiffs brought Section 1983 claims and again failed to provide any evidence to support said claims. <u>Plaintiffs failure to even present evidence as to their Section 1983 claims shows that the **claims were frivolous**</u>.

D.  Claims Against Individual Defendants

After considering the arguments, the Court finds that Defendants are entitled to attorneys' fees incurred in defending the ADEA and Title VII claims brought against the individual Defendants. As established in the Opinion and Order, the ADEA and Title VII do not provide for individual liability. Moreover, Plaintiffs failed to even oppose the arguments put forth by Defendants in their motion for summary judgment. As such, <u>the Court finds that Plaintiffs **claims** against individual Defendants **were frivolous**</u>.

<u>See</u> Statement of Material Facts; Exhibit A (emphasis added).

This Court may take judicial notice of the proceedings of <u>Rodríguez I</u>, including the above mentioned Opinion and Order. To this effect, Rule 201 of the Federal Rules of Evidence provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. Evid. 201 (b). Indeed, courts have repeatedly recognized their authority to take judicial notice of cases pending in their own and other courts' dockets. <u>See, e.g.,</u> <u>Balch v. Ohio Dept. of Rehabilitation and Corrections</u>, 2:09-cv-00002, 2010 WL 1981001, at *3, n.1 (S.D. Ohio, May 18, 2010); <u>Airframe Systems, Inc. v. Raytheon Co.</u>, 520 F.Supp.2d 258, 262 (D.Mass., 2007); <u>Castro v. U.S.</u>, 584 F. Supp. 252, 263 (D.P.R. 1984).

Plaintiff respectfully contends that the factual findings of the District Court's Opinion and Order granting GDB an award of attorneys' fees in the amount of $41,416.25 are dispositive of the

case at hand. Although the District Court's opinion did not specifically use the terms "willful" and/or "malicious", its decision was full of adjectives describing conduct which bankruptcy courts across the country have found to be constitutive of a willful and malicious injury under §523(a)(6). See, e.g., In re Huber, 171 B.R. 740 (Bkrtcy.W.D.N.Y.,1994); In re Chaires, 249 B.R. 101 (Bkrtcy.D.Md., 2000)(holding that acts or conduct that are in bad faith, vexatious, wanton, and for oppressive reasons, are acts that are an intentional injury, without cause or excuse, and are thus both "willful" and "malicious," within meaning of willful and malicious injury exception to discharge under 11 U.S.C. §523(a)(6)). See also Hughes v. Arnold (In re Hughes), 393 B.R. 712 (E.D. Cal. 2008), aff'd 347 Fed. Appx. 359 (9th Cir. 2009), cert. denied, __ U.S. __ (2010) (May 10, 2010),

In the case at hand, the District Court's factual findings are sufficient to show that Debtor-Defendant's conduct during the litigation of Rodríguez I was vexatious, unreasonable, unnecessary, baseless, and frivolous, and as such resulted in willful and malicious injury to the GDB. In other words, the injuries suffered by GDB were the result of Debtor's unjustified an inexcusable behavior. Moreover, it is evident that Debtor acted either intending to cause an injury or with substantial certainty that the injury would occur. See In re Limieux, 306 B.R. at 440. After all, Debtor knew that GDB would have to incur in additional expenses in order to defend itself from all of Debtor's frivolous attacks and baseless motions and claims, and the GDB, in fact, had to incur in those additional expenses and attorneys' fees. In fact, several times during the litigation of Rodríguez I, the GDB complained about the effect of Plaintiffs vexatious and unnecessary litigation tactics, which certainly resulted in an increase of the litigation costs. However, Plaintiffs took the matter lightly and cynically responded that Defendants' argument about the unnecessary increase the cost of litigation was a "ploy not to be taken seriously, but rather [as] borderline frivolous and unquestionably

hopeless." See e.g., Rodríguez I, Dkt. 150, ¶20. Certainly, as evidenced by the factual findings of the Opinion and Order granting the award of attorneys' fees, the District Court did not deem Plaintiffs' litigation behavior as lightly as they did. In view of the above, the GDB respectfully contends that its award of attorneys' fees granted by the District Court in Rodríguez I falls within the ambit of section 523(a)(6) of the Bankrutpcy Code.[1]

Having established that the factual findings issued by the District Court in its Opinion and Order granting GDB an award of attorney's fees in Rodríguez I sufficiently meet the "willful and malicious injury" standard required by 11 U.S.C. §523(a)(6), we proceed to discuss the preclusive effect of such holdings in the present dischargeability proceeding.

### III. Collateral Estoppel Applies to Dischargeability Proceedings

It is well established that a party may invoke collateral estoppel regarding a previously litigated matter in a § 523(a) dischargeability context in order to minimize additional litigation in Bankruptcy Court. Grogan v. Garner, 498 U.S. 279, 284-285 (1991); See also In re Stanley Snow, 405 B.R. 11 (BAP 1st Cir. 2009). Collateral estoppel (or issue preclusion) prevents a party from relitigating issues that have been previously adjudicated. See Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008); González Pina, 407 F.3d 425 (1st Cir. 2005). The premise underlying collateral estoppel is that once a specific issue has been determined in a prior proceeding by a court of competent jurisdiction, the parties and the court need not relitigate the issue in another suit. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). When the issues sought to be precluded were decided by a federal court, as in the case at bar, the Bankruptcy Court must apply the

---

[1] In the event this Honorable Court deems section 523(a)(6) of the Bankruptcy Code inapplicable to the instant proceeding, the GDB contends, regardless, that the award of fees is non dischargeable since it constitutes a post petition debt arising from the Opinion and Order issued by the District Court on April 12, 2010.

theoretically uniform federal common law of collateral estoppel. See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 324 n. 12 (1971).

In Grogan v. Garner, the Supreme Court endorsed the formulation of the doctrine of collateral estoppel as expressed by the Second Restatement of Judgments:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

498 U.S. at 284 (citing Restatement (Second) of Judgments § 27). The First Circuit Court of Appeals has reduced this general statement into the following four factors: (1) identity of issues; (2) actuality of litigation; (3) finality of the earlier resolution, and; (4) centrality of the adjudication. See, e.g., Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 90 (1st Cir. 2007); González-Pina at 430. To this effect, the central question is "whether a party has had a full and fair opportunity for judicial resolution of the same issue." Rodríguez García v. Miranda Marín, 610 F.3d 756, 771 (1st Cir. 2010).

In the present case, the doctrine of collateral estoppel applies to prevent re-litigation of the elements necessary to except the debt from discharge. In other words, the doctrine of collateral estoppel precludes the parties from re-litigating the issue of Debtor's conduct during the litigation of Rodríguez I. As shown below, the four elements of the collateral estoppel doctrine are satisfied in this case:

### 1. Identity of issues

This requirement refers to whether the issue sought to be precluded is the same as that which was involved in the prior proceeding. See González Pina, 407 F.3d at 430. The GDB respectfully submits that the issue related to Debtor's willful and malicious conduct during the litigation of

Rodríguez I and the injuries inflicted upon the Bank as a result of Debtor's conduct is the same issue already adjudicated by the District Court in Rodríguez I, specifically in the District Court's Opinion and Order granting the request of attorneys' fees filed by GDB. See Exhibit A. The fact that the instant proceeding is a nondischargeability proceeding and, thus, different, in its nature, to the proceedings of Rodríguez I is irrelevant for the purposes of applying the doctrine of collateral estoppel. To such effects, the United States Supreme Court has recognized that under collateral estoppel, once court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of issue in suit on different cause of action involving party to first case. See Allen v. McCurry, 449 U.S. 90, 94 (1980). Thus, the GDB respectfully submits that the "identity of issue" requirement is satisfied in order to apply the doctrine of collateral estoppel (issue preclusion) to the instant proceeding.

### 2. Actuality of litigation

This requirement refers to whether the point at issue was actually litigated in the earlier proceeding. See González Pina, 407 F.3d at 430. The GDB respectfully submits that the issue related to Plaintiffs' bad faith, frivolous and vexatious conduct during the litigation of Rodríguez I, was actually litigated before the District Court. In fact, the litigation of this issue warranted the award of attorneys' fees in favor of GDB. Although, the Plaintiffs did not oppose to the GDB's motion for attorneys' fees, such lack of opposition does not deny application of the collateral estoppel doctrine to the instant proceeding. After all, Debtor had the opportunity to oppose the request of attorneys' fees, but opted not to. As has been held by the Court of Appeals for the First Circuit in the context of the "actually litigated" requirement, an issue may have been "actually litigated" in a prior proceeding, as required for prior judgment to be accorded collateral estoppel

effect, though party to be estopped did not take a position on the issue; it is enough that issue was raised in prior proceeding, and that party to be estopped had a full and fair opportunity to participate. See Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 981 (1st Cir. 1995); Fernández-Vargas v. Pfizer Pharmaceuticals, Inc., 394 F.Supp.2d 407, 413 (D.P.R. 2005). In Rodríguez I, the issue of debtor's unreasonable, bad faith, frivolous and baseless conduct during the litigation, which the GDB submits is sufficient to meet the willful and malicious standard of §523(a)(6), was squarely raised before the District Court through the GDB's motion requesting attorneys' fees and decided in the latter's favor. See Rodríguez I, Dkt.272. Therefore, GDB respectfully submits that the "actually litigated" requirement is fully satisfied in order to apply the doctrine of collateral estoppel to the instant proceeding.

      3.  Finality of the earlier resolution

This requirement refers to whether the issue was determined by a valid and binding final judgment or order. See González Pina, 407 F.3d at 430. The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided. The purposes of issue preclusion are only to avoid the burdens and potentially disruptive consequences of permitting a second and possibly inconsistent determination of matters that have been once decided. See 18 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure §4420 (2nd ed., 2010). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive on subsequent suits . . . ." Montana v. U.S., 440 U.S. 147 (1979).

On April 12, 2010, the District Court in Rodríguez I issued an Opinion and Order granting the GDB's motion for attorneys' fees. See Rodríguez I, Dkt. No. 278; Exhibit A. Thus, the issue

was finally determined by a valid and binding final order. Although Debtor subsequently filed a motion to vacate the Opinion and Order (See Rodríguez I, Dkt. 281)[2] and also appealed to the First Circuit Court of Appeals[3] such actions does not impede the application of the doctrine of collateral estoppel to the present proceeding. As the Court of Appeals for the First Circuit held in the case of In re Kane, 254 F.3d 325 (1st Cir. 2001), "[t]he general rule [of issue preclusion] applies . . . even where the first . . . judgment is still on appeal when the second action occurs." Id. at 328. Consequently, neither Debtor's motion to vacate the Opinion and Order nor the Appeals filed by Debtor and her attorneys have the effect of altering the finality of the Opinion and Order issued by the District Court for purposes of collateral estoppel. Consequently, the GDB contends that collateral estoppel's "finality of the resolution" requirement is also satisfied in the instant proceeding.

    4.     Centrality of the adjudication

Also known as the "necessarily decided" element of collateral estoppel, this requirement refers to whether the determination of the issue in the prior proceeding was essential to the final judgment or order. See González Pina, 407 F.3d at 430. The reason for this condition is that a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative. See 18 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure §4421 (2nd ed. 2010). Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair. However, an analysis of the discussion above,

---

[2] The motion to vacate the Opinion and Order filed by Plaintiffs in Rodríguez I is still under consideration of the District Court.

[3] The Appeal was held in abeyance by the Court of Appeals pending the District Court's disposition of the motion to vacate. See Exhibit C.

demonstrates, without a doubt, that the District Court's factual findings regarding Debtor's bad faith, vexatious, unreasonable, unnecessary and frivolous behavior during the litigation of <u>Rodríguez I</u> were essential to its determination to grant the award of attorneys' fees in favor of GDB. Therefore, GDB contends that the "centrality of the adjudication" requirement is also satisfied in order to apply the doctrine of collateral estoppel to this proceeding.

Having satisfied all requirements for application of the doctrine of collateral estoppel to the present case, the GDB respectfully request this Honorable Court to apply the doctrine in order to prevent re-litigation of factual matters decided by the District Court in <u>Rodríguez I</u>, which also constitute elements for the non-dischargeability of the award of attorneys' fees granted in favor of GDB.

**IV.     Standard for Summary Judgment**

A motion for summary judgment in an adversary proceeding under § 523(a)(6) to have a debt declared nondischargeable is governed by the same standards applicable to motions under Fed.R.Civ.P. 56. <u>See</u> Fed. R. Bankr.P. 7056. <u>See also</u> <u>In re Ortiz</u>, 2009 WL 2912497 (Bankr. D.P.R. 2009).

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure a party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Under the Rules, a motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue regarding the material facts of the case and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). <u>See also</u> <u>Celotex Corp. v. Cattret</u>, 477 U.S. 317, 322 (1986). "In operation, summary judgment's role is to pierce the boilerplate of the pleadings and

assay the party's proof in order to determine whether trial is actually required." <u>Wynne v. Tufts Univ. School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992). It works in two phases. First, the moving party must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. Once the moving party has properly supported its motion, the burden shifts to the non-movant to demonstrate, through specific facts, that trial-worthy issue remains. See <u>Candle Co. v. Hayes</u>, 116 F.3d 957, 959-60 (1st Cir. 1997); <u>Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.</u>, 96 F.3d 10, 14 (1st Cir. 1996). Moreover, when the non-moving party has the burden of proof at trial, as in this case, it may not rest upon mere conclusory allegations, improbable inferences, unsupported allegations or denials in its pleading. Instead, it must set forth specific facts which arise from definite and competent evidence to establish the existence of a genuine issue for trial. See <u>Pagano v. Frank</u>, 983 F.2D 343, 347 (1st Cir. 1993). Finally, "only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986).

## V. Conclusion

The Opinion and Order issued by the District Court in <u>Rodríguez I</u>, granting an award of attorneys' fees in favor of GDB, is self explanatory. See Exhibit A. The District Court's factual findings, such as debtor's bad faith, vexatious, unreasonable, frivolous and unnecessary behavior during the litigation of <u>Rodríguez I,</u> warranted the imposition of attorneys' fees in the amount of $41,416.25. As discussed above, such factual findings are also sufficient to establish the "willful and malicious injury" standard required for the non-dischargeability of a debt under section 523(a)(6) of the Bankruptcy Code. In addition, the District Court's Opinion and Order granting the award of attorneys' fees in favor of GDB satisfy all the requirements for application of the collateral estoppel

doctrine in order to prevent the parties from re-litigating factual issues regarding Debtor's conduct during the litigation of Rodríguez I.

WHEREFORE, Plaintiff, GDB, respectfully request this Honorable Court to grant GDB's Motion for Summary Judgment and, therefore to issue judgment establishing that the award of attorneys' fees granted by the District Court in Rodríguez I is nondischargeable under section 523(a)(6) of the Bankruptcy Code.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 18th day of October 2010.

CERTIFICATE OF SERVICE.

IT IS HEREBY CERTIFIED that on this same date, the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants, and caused it to be served on the next business day via a third party court authorized noticing provider BK Attorney Services to: William Meléndez, Esq., 410 Park Avenue 15th Floor #1223, New York, NY 10022.

| | |
|---|---|
| **SCHUSTER AGUILÓ LLP** | **SONIA COLÓN LAW OFFICES, P.A.** |
| PO Box 363128 | P.O. Box 621597 |
| San Juan, Puerto Rico 00936-3128 | Orlando, Florida 32862-1597 |
| Tel: (787) 765-4646; Fax: (787) 765-4611 | Telephone: 407-574-8272 |
| | Facsimile: 888-537-4536 |
| **s/ Andrés C. Gorbea Del Valle** | **s/ Sonia E. Colón** |
| **Andrés C. Gorbea Del Valle** | **SONIA E. COLÓN** |
| USDC PR No. 226313 | USDC PR No. 213809 |
| agorbea@salawpr.com | sonia@soniacolonlaw.com |